Samuel M. Gold, J.
This is an application by three petitioners to stay arbitration demanded by a union, known as United Scenic Artists, Local 829. The petitioners are National Broadcasting Company, Inc., Columbia Broadcasting System, Inc., and American Broadcasting-Paramount Theatres, Inc.
Each of the petitioners entered into a collective bargaining agreement with the union, on or about November 3,1958. Paragraph 10 of each agreement provides that “ disputes, claims or controversies which are arbitrable (hereinafter called ‘ disputes ’) within the meaning of this paragraph shall consist only of issues involving the interpretation or application of particular clauses of this agreement and alleged violations thereof. The arbitrators shall not have the right or authority to add to, subtract from, or alter any of the provisions of this agreement. * * * In the event that the dispute cannot be so settled it shall be submitted to arbitration on the request of either party ” (emphasis supplied).
By letters dated January 18, 1960, the union demanded that petitioners arbitrate the union's contention “that production by means of video-tape falls into the same category as motion picture production and is not covered by the terms of an existing contract.” Petitioners take the position that the existing contracts clearly cover telecasts made by them through videotape recordings and that there is, therefore, no arbitrable dispute.
It is well established that a contractual provision to arbitrate disputes does not permit a party to the contract to compel arbitration of a contention which is clearly contrary to the provisions of the contract and fop which no reasonable basis exists, *744 In Matter of General Elec. Co. (United Elec. Radio & Mach. Workers) (300 N. Y. 262) the Court of Appeals said (p. 264): “ Whether or not a bona fide dispute exists is a question of law (Matter of Wenger & Co. v. Propper Silk Hosiery Mills, 239 N. Y. 199, 202-203). If there is no real ground of claim, the court may refuse to allow arbitration although the alleged dispute may fall within the literal language of the arbitration agreement.” In Matter of Sarle (Sperry Gyroscope Co.) (4 A D 2d 638, affd. 4 N Y 2d 917) the court stated (pp. 641-642): “It has been held definitively by the Court of Appeals that a bona fide dispute is not raised with regard to the interpretation of such an agreement if the tendered issue involves the meaning of a provision which is ‘ beyond dispute ’. Such an issue raises a question of law to be determined preliminarily by the court, even though the- alleged dispute may fall within the literal language of the arbitration agreement.” The court pointed out (p. 642, n. 1) that “ what is meant is that to the court there appears no reasonable basis for the contention, even so slight as to admit of the matter being submitted to the arbitrator for interpretation, the latter being the province of the arbitrators and not the court.” The mere assertion of a dispute, unsupported by facts, does not establish the existence of a genuine arbitrable dispute (Matter of Essensen [Upper Queens Med. Group], 307 N. Y. 68).
Each of the November, 1958 contracts between the respective petitioners and the union expressly provides in paragraph 1 that ‘ ‘ this agreement applies * * * to Scenic Designers, Chargeman Scenic Artists, Journeyman Scenic Artists, Costume Designers, Student Designers and Student Painters (hereinafter collectively called ‘ Employees ’) employed by the Company in connection with its operations in television broadcasting in New York City. * * * It is understood that this Paragraph 1 (scope) is intended to include the practices of the Company with respect to this Paragraph which have heretofore or are presently existmg or which may hereafter be mutually agreed upon ” (emphasis supplied). Petitioners allege, ivithout denial by the union, that, at the time the 1958 contracts were entered into, the operations of petitioners in television broadcasting, in New York City, included the production and use of video-tape which had come into use in 1956. Indeed, during the course of the negotiations which led to the 1958 agreements the union concededly demanded that the jurisdictional provision of paragraph 1, previously quoted, contain an express exclusion of work performed in connection with video-tape recordings. The agreements as signed, however, did not contain such an *745 exclusion. Had the 1958 agreements expressly provided that they were to apply to telecasting involving the production or use of video-tape, it would be clear that the union’s claim that such telecasting was not covered by those agreements would not be arbitrable. Although there is no express provision in such language in the 1958 agreements, their effect is exactly the same, in view of the undenied and conceded fact that petitioners’ telecasting operations in New York City included the production and use of video-tape at the time the 1958 contracts were made. The contracts expressly provide that they shall apply to the designers, etc., “ employed by the Company in connection with its operations in television broadcasting in New York City ” and “ that this Paragraph 1 (scope) is intended to include the practices of the Company with respect to this Paragraph which have heretofore or are presently existing”. The practices of petitioners which had existed and were then existing included telecasting through the production and use of video-tape.
The union relies upon a letter written by its attorney during the course of the negotiations which resulted in the 1958 contracts, in which the attorney stated that the union was reserving the right to claim that the contracts do not cover video-tape operations. This unilateral reservation of an alleged right to contend that the contracts do not apply to video-tape operations cannot, however, change the meaning of the clear and unambiguous language of the contracts to the effect that they are applicable to the practices then existing in connection with petitioners’ telecasting operations in New York City, which concededly included the production and use of video-tape.
The union also contends that the production of video-tape is very similar to that of motion picture film. It argues that since the two petitioners who produce motion picture film in the City of New York have treated such production as not covered by their television contracts with the union, the production of video-tape recordings must likewise be regarded as not covered by the. 1958 television contracts. This argument is fallacious. The fact that two of the petitioners have been willing to make the production of motion picture film for television the subject of separate contracts, with different rates, is insufficient to require them to do the same as to the production of video-tape recordings for television use. It is to be noted, in this connection, that motion picture film, is produced in motion picture studios and that the use of motion picture cameras and equipment is required, whereas video-tape recordings are produced in television studios with television cameras and equipment.
*746 The union also claims that the 1958 agreements are limited to live television and therefore do not apply to television involving video-tape recordings. There is, howéver, nothing in the 1958 agreements to support the contention that they are limited to live television broadcasting.
For the reasons indicated, the court holds that thére is no reasonable basis for the union’s contention that the Í958 agreements do not apply to telecasts involving the production Or usé of video-tapé, in the light of the express provisions of the contracts as to their scope and the iindehied fact that petitioners, at the time the contracts were entered into, used vídéo-tape in connection with their NW York City telecasting Operations. The motion to stay arbitration must accordingly be granted.
In view of this disposition, it is unnecessary to consider petitioners ’ additional contention that the arbitration clause being limited to issues 11 involving the interpretation or application of particular clauses of this agreement and alleged violations thereof ” (emphasis supplied) is inapplicable here because the union has not charged petitioners with any violations of the 1958 contracts. Motion granted.